UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

WALLACE DRAKE,

                    Petitioner,

          vs.

THOMAS LAVALLEY,[1] Superintendent,
Great Meadow Correctional Facility,

                    Respondent.

No. 9:07-cv-00964-JKS

MEMORANDUM DECISION

Petitioner Wallace Drake, a state prisoner proceeding *pro se*, has filed a petition for

habeas corpus relief under 28 U.S.C. § 2254.  Drake is currently in the custody of the New York

Department of Correctional Services, incarcerated at the Great Meadow Correctional Facility.

Respondent has answered, and Drake has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

Following a trial by jury, Drake was convicted in the Onondaga County Court of one

count of Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110.05[3]/125.25[1]), one

count of Assault in the First Degree (N.Y. Penal Law § 120.10[1]), and one count of Criminal

Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[2]).  The Onondaga

County Court sentenced Drake, as a predicate felony offender, to concurrent prison sentences of

25 years for the attempted murder count, 25 years for the assault count, and 15 years for the

weapon count, with five years of post-release supervision.  After the verdict and prior to

---

[1] Thomas LaValley, Superintendent, Great Meadow Correctional Facility, is substituted
for Darwin LaClair, Superintendent, Great Meadow Correctional Facility.  Fed. R. Civ. P. 25(d).

sentencing, Drake, represented by counsel, filed a motion to set aside the verdict under N.Y.

Criminal Procedure Law § 330.30[1] in the Onondaga County Court. The Onondaga County

Court denied the motion immediately prior to imposing sentence.[2]   Drake timely appealed his

conviction and sentence to the Appellate Division, Fourth Department, which affirmed, and the

New York Court of Appeals denied leave to appeal on July 22, 2005.[3]   After the Appellate

Division rendered its decision on the direct appeal, and while the petition for leave to appeal was

pending before the New York Court of Appeals, Drake, appearing *pro se*, filed a motion in the

Onondaga County Court under N.Y. Criminal Procedure Law § 440.10[1](g) to vacate the

judgment. The Onondaga County denied the motion in an unpublished, reasoned decision,[4] and

the Appellate Division denied leave to appeal on May 9, 2007.[5]   Drake timely filed his petition in

this Court on July 10, 2007.

## II.  GROUNDS PRESENTED

In his petition Drake raises seven grounds:  (1) The verdict was against the weight of the

evidence; (2) ineffective assistance of counsel (no reasons or facts specified); (3) denial of due

process for failure to hold a proper Sirois hearing;[6] (4) denied the right to have counsel of own

---

[2] Docket No. 8-26, pp. 106–111.

[3] *People v. Drake*, 794 N.Y.S.2d 771 (App. Div), *lv. denied*, 835 N.E.2d 668 (N.Y. 2005) (Table).

[4] Docket No. 8-21.

[5] Docket No. 8-24.

[6] A Sirois hearing is a short-hand reference to the procedure under New York law to determine if the acts or conduct of a criminal defendant caused a material witness to be unavailable to testify at trial thereby waiving the constitutional right of confrontation or the evidentiary rules against the admission of hearsay.  *See People v. Cotto*, 699 N.E.2d 394, 397-98 (N.Y. 1998).

choosing; (5) ineffective assistance of counsel for failure to properly investigate and prepare for trial; (6) ineffective assistance of counsel by reason of counsel's lack of mental competency; and (7) the Adair affidavit creates an issue as to the validity of the conviction. Respondent contends that Drake's first ground is unexhausted and procedurally barred, and that his fourth and sixth grounds are procedurally barred under adequate and independent state grounds. Respondent raises no other affirmative defense.[7]

### III.  STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[8]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[9]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on

---

[7] *See* Rules—Section 2254 Cases, Rule 5(b).

[8] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[9] *Williams*, 529 U.S. at 412.

3

the supervisory power of the Supreme Court over federal courts.[10]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[11]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[12]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[13]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[14]  Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[15]

In applying this standard, this Court reviews the last reasoned decision by the state court.[16]  In addition, the state court's findings of fact are presumed to be correct unless the

---

[10] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[11] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[12] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[13] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[14] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[15] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[16] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

petitioner rebuts this presumption by clear and convincing evidence.[17]  Where there is no

reasoned decision of the state court addressing the ground or grounds raised on the merits and no

independent state grounds exist for not addressing those grounds, this Court must decide the

issues *de novo* on the record before it.[18]  In so doing, because it is not clear that it did not so do,

the Court assumes that the state court decided the claim on the merits and the decision rested on

federal grounds.[19]  This Court gives the assumed decision of the state court the same AEDPA

deference that it would give a reasoned decision of the state court.[20]

## IV.  DISCUSSION

For the purpose of discussing Drake's grounds, this Court has divided them into two

groups.  In the first group are the three grounds that do not allege ineffective assistance of

counsel–the first, third and seventh grounds.  The second group includes the four grounds that

relate to Drake's representation by counsel–the second, fourth, fifth, and sixth grounds.

**A.       Group One:  First, Third and Seventh Grounds**.

Ground 1:  Verdict Against Weight of the Evidence.

In his petition, Drake offers no evidentiary basis or argument for his conclusory statement

that the verdict was against the weight of the evidence.  In his brief filed in the Appellate

---

[17] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[18] *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

[19] *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *see also Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).

[20] *Jimenez*, 458 F.3d at 145-46.

Division, Drake pointed to numerous inconsistencies in the testimony given at trial and then

argued in summation:

> Based upon these discrepancies, and the obvious differences in what
> people saw, or testified to what they saw, and their relative abilities under the
> circumstances to observe and recall, weighing the conflicting inferences, a
> different verdict may have been possible.  Therefore the verdict was against the
> weight of the evidence and the judgment should be reversed and the indictment
> dismissed.[21]

The Appellate Division rejected Drake's argument without explanation or elaboration, simply

holding:

> We reject defendant's contention that the verdict is against the weight of the
> evidence.  There is no indication in the record before us that the jury failed to give
> the evidence the weight it should be accorded.

In his traverse, Drake advances a considerably different argument.  For the first time,

Drake contends that the evidence failed to establish a necessary element of the crimes, *i.e.*, that

he had the intent to cause the death of the victim.  This Court does not ordinarily consider issues

raised for the first time in the traverse.  "The petition must: (1) specify all the grounds for relief

available to the petitioner; (2) state the *facts* supporting each ground; [and] (3) state the relief

requested. . . ."[22]  To the extent that Drake wishes to assert a new factual basis for his petition,

the proper procedure would be to file a motion to amend the petition under Federal Rule of Civil

Procedure 15.  In this case, however, as discussed below, such a motion would be futile.

Respondent contends that Drake is procedurally barred from litigating this claim on the

merits in federal habeas proceedings.  This Court agrees.  Although the issue was properly raised

---

[21] Docket No. 8-2, p. 28.

[22] Rules—Section 2254 Cases, Rule 2(c) (emphasis added).

before the Appellate Division in Appellant's Opening Brief, in his petition for review to the New

York Court of Appeals Drake listed only the ineffective assistance of counsel claim contained in

the Appellant's Brief and the three claims presented in Appellant's *Pro Se* Supplemental Brief.

Claims are fairly presented to the New York Court of Appeals when the application for leave to

appeal clearly states that all claims in the attached brief are being pressed, or no arguments are

made in detail and the application simply requests review of all issues outlined in the brief.[23]

When the application for leave to appeal refers to specific claims raised before the Appellate

Division but omits mention of others, the unmentioned claims are deemed abandoned.[24]   The

application for leave to appeal filed with the New York Court of Appeals in this case falls within

the second category.  Consequently, Drake forfeited his weight of the evidence claim in the state

and is barred from litigating that claim in this Court in these proceedings.[25]

   Even if this Court were to reach the merits, Drake would not prevail.  Under *Jackson*,[26]

the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence

in the light most favorable to the prosecution, *any* rational trier of fact could have found the

---

[23] *Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000); *see also Morgan v. Bennett*, 204 F.3d 360, 369-71 (2d Cir. 2000) (the application for leave to appeal did not specify any particular issue for review, but enclosed the briefs filed in the Appellate Division and requested the Court of Appeals consider and review all issues raised in the appellant's brief and *pro se* supplemental brief).

[24] *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

[25] *Id.* at 121.

[26] *Jackson v. Virginia*, 443 U.S. 307 (1979).  Under New York law, the Appellate Division employs two related standards of review—legal sufficiency and weight of the evidence. N.Y. Crim. Proc. Law § 470.15[4](b), [5]; *People v. Bleakley*, 508 N.E.2d 672, 674-75 (N.Y. 1987).  Although Drake's argument is couched in terms of the New York weight of the evidence test, in reviewing the assumed decision of the Appellate Division, this Court applies the federal constitutional sufficiency of the evidence test set forth in *Jackson*.

essential elements of the crime beyond a reasonable doubt."[27]  This Court must, therefore, determine whether the assumed decision of the Appellate Division on the merits unreasonably applied *Jackson*.

Drake's argument focuses on inconsistencies in the testimonial evidence.  Drake misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[28]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[29]  This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain a conviction of the crime charged as prescribed by state law.[30]  That such evidence exists is clearly established by the record in this case.  The trial court noted the proof included "very, very solid eyewitness testimony by two individuals who watched [Drake] shoot Mr. Gist."[31]  One, who knew Drake, witnessed the crime from across the street and identified Drake in court as the person who shot the victim.[32]  Another,

---

[27] *Jackson*, 443 U.S. at 319 (emphasis in the original).

[28] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[29] *Jackson*, 443 U.S. at 324 n.16.

[30] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

[31] Docket No. 8-26, p. 114.

[32] Docket No. 8-27, pp. 248–49, 252.

who witnessed the crime from about 50 feet away, testified that Drake was the shooter[33] and identified Drake in court as having said on the day before this shooting that he was going to get a person who had robbed him.[34]  While in jail, Drake admitted his crimes to a fellow inmate.[35]

The victim, Kain Gist, testifying for the defense, testified that he was not shot by Drake but rather had been shot by someone who was from out of town.[36]  In his statement to a police officer made in the ambulance shortly after he was shot, Gist stated that a person named Drake had shot him,[37] a statement Gist admitted making.[38]  On cross-examination by the prosecutor, Gist also acknowledged that he identified Drake as the shooter from a photo array and gave a statement under penalty of perjury identifying Drake as the shooter approximately two months after the shooting.[39]  Gist also acknowledged giving testimony to the Grand Jury identifying Drake as the shooter.[40]

Drake bears the burden of establishing, by clear and convincing evidence, the factual findings of the jury were erroneous; a burden he has failed to carry.  Here, the Appellate Division, a state court, found that there was sufficient evidence to support conviction of the crimes under state law.  Gist's prior inconsistent statements amply support the jury's resolution

---

[33] Docket No. 8-27, pp. 286-87.

[34] Docket No. 8-27, pp. 288-89.

[35] Docket No. 8-28, pp. 19-20.

[36] Docket No. 8-29, p. 21.

[37] Docket No. 8-27, pp. 277-78.

[38] Docket No. 8-29, p. 21.

[39] Docket No. 8-29, pp. 24-34.

[40] Docket No. 8-29, pp. 38-39.

of the issue of credibility in favor of the People's witnesses.  The factual finding of the Appellate Division is amply supported by evidence in the record, and that the evidence sufficed under state law is beyond the purview of this Court in a federal habeas proceeding.  Drake is not entitled to relief under his first ground.

Ground 3:  Failure to Hold Sirois Hearing.

Drake argues that the trial court failed to hold a proper Sirois hearing before finding that he was responsible for the People's failure to produce the victim, Kain Gist, at trial.  Drake raised this issue in his direct appeal.  The Appellate Division did not address that issue in its decision. Consequently, this Court must assume that the Appellate Division decided the issue on the merits and review that assumed decision under the *Musladin-Schriro-Fry* standards.

As Respondent correctly notes, in this case, Sirois is inapposite.  A Sirois hearing is a short-hand reference to the procedure under New York law to determine if the acts or conduct of a criminal defendant caused a material witness to be unavailable to testify at trial, thereby waiving the constitutional right of confrontation or the evidentiary rules against the admission of hearsay.[41]   In proceedings outside the presence of the jury at the start of the trial, in ordering protection for certain witnesses (other than Gist) and remanding Drake to jail during the trial, the trial court did make findings that Drake engaged in conduct intended to intimidate witnesses.[42] In denying a request for a missing witness charge by the defense, the trial court also made a finding that the People were excused from producing Gist at trial.[43]  Gist was, however, actually

---

[41] *See Cotto*, 699 N.E.2d at 397-98.

[42] Docket No. 8-27, pp. 193-196.

[43] Docket No. 8-28, pp. 60-62.

called as a witness by and testified for Drake at the trial.[44]  Drake has not raised a confrontational

issue and, since the prior inconsistent statements were elicited on cross-examination for

impeachment purposes, there was no hearsay issue.  A Sirois hearing was not required.  Drake

has failed to raise a federal constitutional issue cognizable in a federal habeas proceeding and,

therefore, is not entitled to relief under his third ground.

Ground 7:  Effect of Adair Affidavit.

In Drake's § 440.10 motion Drake presented the affidavit of Joseph Adair in which Adair

admitted that he, not Drake, shot Gist.[45]  Drake argues that this new evidence creates an issue as

to the validity of his conviction.  The Onondaga County Court, in denying Drake's motion, held:

> As to (2), Defendant contends that new evidence has been discovered
> which could not have been produced by defendant at the trial, even with due
> diligence, and which is of such a character as to create the probability that had
> such evidence been received at trial, the result would have been more favorable.
> *Defendant's Affidavit, page* 2.  The newly discovered evidence consists of the
> sworn affidavit of JOSEPH S. ADAIR, dated March 21, 2005, in which ADAIR
> admits to the crime for which Defendant now stands convicted.
>
> *CPL §440. 10(1)(g)* states that a court may vacate a judgment upon the
> ground that new evidence has been discovered since the entry of the judgment
> based upon a verdict of guilty after trial, which could not have been produced by
> the defendant at the trial even with due diligence on his part and which is of such
> character as to create a probability that had such evidence been received at the
> trial the verdict would have been more favorable to the defendant; provided that a
> motion based upon such ground must be made with due diligence after the
> discovery of such alleged new evidence.
>
> Newly discovered evidence, in order to be sufficient to warrant vacating
> the judgment of conviction, must fulfill all of the following requirements:  (1) it
> must be such as will probably change the result if a new trial is granted; (2) it
> must have been discovered since the trial; (3) it must be such as could have not
> been discovered before the trial by the exercise of due diligence; (4) it must be
> material to the issue; (5) it must not be cumulative to the former issue; and (6) it

---

[44] Docket No. 8-29, pp. 20-49.

[45] Docket No. 8-12.

11

must not be merely impeaching or contradicting the former evidence. *People v Richards,* 266 AD2d 714, *Iv den'd,* 94 NY2d 924, citing *People v Salemi,* 309 NY 208, *cert den'd,* 350 US 950; quoting *People v Priori,* 164 NY 459; see *People v Sides,* 242 AD2d 750, *lv den'd,* 91 NY2d 836; *People v Ulrich,* 265 Ad2d 884.

> Mr. Adair's affidavit states, in relevant part, that
> "On that said day & time [August 4, 2001, "in front of a store called the Uptown Market . . . on East Fayette Street"] I was the person that shot Kain Gist 2X's once in his back and once in his shoulder and on that same day I told Wallace Drake & Tacuma Abdullah while we were smoking weed in Mr. Abdullahs green car 'That I was about to shoot somebody they knew'."

Although this evidence appears to fulfill some of the requirements noted above, Mr. Adair's statement itself supports the conclusion that the information proferred as "new evidence" was known to the Defendant on the day of the incident, and certainly at the time of trial. The "newly discovered evidence" which supports this application does not meet the requirement that the evidence ". . . be such as could have not been discovered before the trial by the exercise of due diligence". [*Sic*] *People v Salemi,* supra.

> Power to set aside a verdict based on newly discovered evidence is purely statutory and may be exercised in the discretion of the trial court when statutory requirements have been satisfied, *Trippe v Calavito,* 524 FSupp 829; *People v Taylor,* 246 AD2d 410, *app den'd;* 91 NY2d 978.

> A claim of newly discovered evidence lacks substance where Defendant fails to establish that the evidence could not, with due diligence, have been discovered prior to trial, (*People v Lent,* 204 AD2d 855, *app den'd,* 84 NY2d 869), and a Defendant's failure to explain why new evidence was not available at *the* time of trial warrants denial of a motion to vacate the judgment of conviction. *People v Whitmore,* 12 AD3d 845, *Iv den'd,* 4 NY3d 769.

> This court finds that the statutory requirements have not been met for the relief requested.[46]

Under Federal Rule of Criminal Procedure 33 the grant or denial of a new trial on the ground of newly discovered evidence is committed to the discretion of the district (trial) court.[47] As under New York law, a federal court should grant a new trial only if the defendant can show that the newly discovered evidence is, in fact, new; that is, it could not have been discovered

---

[46] Docket No. 8-21, pp. 3–4.

[47] *See United States v. Damblu*, 134 F.3d 490, 493 (2d Cir. 1998).

using due diligence at trial, and that the evidence was so material that it would probably result in an acquittal.[48]  Because the Onondaga County Court applied the same standard as is applied in federal criminal prosecutions, this Court cannot say that the decision of the Onondaga County Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[49]

To the extent that Drake may be attempting to raise a free-standing claim of actual innocence, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."[50]  "'*[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.*'"[51]

As Respondent correctly argues, while a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review in federal habeas proceedings, a situation not present in this case, the Supreme Court has never held that a freestanding claim of innocence is cognizable in a federal habeas proceeding.[52]  Even if such a claim were cognizable,

---

[48] *See United States v. Siddiqi*, 959 F.2d 1167, 1173 (2d Cir. 1992).

[49] 28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005); *McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003).

[50] *Herrera v. Collins*, 506 U.S. 390, 400 (1993).

[51] *Id.* (emphasis in the original) (quoting *Townsend v. Sain*, 372 U.S. 293, 317 (1963)).

[52] *House v. Bell*, 547 U.S. 518, 554-55 (2006); *Herrera*, 506 U.S. at 418-19.

the threshold for any such claim would necessarily be "extraordinarily high."[53]  The putative

confession of Adair does not meet such a demanding standard.  In his confession, Adair states he

shot the victim with a .32 caliber handgun.[54]  Yet forensic testimony established that the bullets

removed from the victim were either .38 or .357 caliber.[55]  In the circumstances presented in this

case, it is certainly reasonable to presume that Adair's confession, produced well after trial from

a potential defense witness known to Drake before trial, was fabricated.[56]  Having failed to

present a viable federal constitutional issue cognizable by this Court in a federal habeas

proceeding, Drake is not entitled to relief under his seventh ground.

**B.     Group Two:  Second, Fourth, Fifth, and Sixth Grounds [Ineffective Assistance of Counsel].**

Under *Strickland,*[57] to demonstrate ineffective assistance of counsel, Petitioner must show

both that his counsel's performance was deficient and that the deficient performance prejudiced

his defense.[58] A deficient performance is one in which counsel made errors so serious that

counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[59]  Petitioner

must show that defense counsel's representation was not within the range of competence

---

[53] *Herrara*, 506 U.S. at 417.

[54] Docket No. 8-12, p. 2.

[55] Docket No. 8-28, p. 33.

[56] *Cf. Taylor v. Illinois*, 484 U.S. 400, 414 (1988) (noting that there is something suspect about a defense witness who is not identified until after the 11th hour has passed and if a discovery violation is explicable only on the assumption that the violation was designed to conceal a plan to present fabricated testimony, it is appropriate to exclude the tainted evidence).

[57] *Strickland v. Washington*, 466 U.S. 668 (1984).

[58] *Id.* at 687.

[59] *Id.*

14

demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[60]  *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.[61] Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.[62]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more

---

[60] *Woodford v. Visciotti*, 537 U.S. 19, 22-23 (2002);  *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[61] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[62] *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted).

15

general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[63]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[64]

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[65] "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial."[66]

Drake bears the burden of proving that counsel's trial strategy was deficient. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[67]   "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[68]   "Because advocacy is an art and not a science, and because the adversary system

---

[63] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct.1411, 1420 (2009).

[64] *See Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[65] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[66] Id.

[67] *Strickland*, 466 U.S. at 689.

[68]  *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[69]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[70]  This Court must then consider those acts or omissions against "prevailing professional norms."[71]  Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[72]

Ground 2:  Ineffective Assistance of Counsel.

Drake provides no factual basis for his bare conclusory statement that he was denied the effective assistance of counsel.  The petition must specify all the grounds for relief available to the petitioner and the *facts supporting* each ground.[73]  If it plainly appears on the face of the petition that petitioner is not entitled to relief, a district court must dismiss the petition.[74]  The district court may dismiss on this basis *sua sponte* after initial screening and an answer has been ordered and filed.[75]  Drake has not provided a sufficient factual basis to show he is entitled to relief under his second ground.  Accordingly, the second ground is dismissed.

---

[69] *Strickland*, 466 U.S. at 681.

[70] *Id*. at 690.

[71] *Id*.

[72] *Id*.

[73] Rules—Section 2254 Cases, Rule 2(c); *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005).

[74] Rules—Section 2254 Cases, Rule 4.

[75] *See Day v. McDonough*, 547 U.S. 198, 207-09 (2006).

<u>Ground 4:  Counsel of Defendant's Own Choosing</u>.

In his fourth ground, Drake contends that he was denied the right to counsel of his choice. According to Drake, he retained Andre Sobolevsky, who had previously represented Drake in matters.  Gregory McPhee, an associate of Sobolevshy's firm, represented Drake throughout the pretrial proceedings and trial without Drake's consent or approval.  The engagement letter in the record was with the firm, not the individual attorney.  Sobolevsky, the attorney of choice, who had admittedly represented Drake in prior matters, assigned McPhee to represent Drake in this case.   There is also indication in the record that, although it was contemplated at the beginning that Sobolevsky would provide the representation, McPhee took over representation very early in the proceedings without any objection from Drake.    This issue was presented to the Appellate Division in Drake's *pro se* Supplemental Brief on Appeal.  The Appellate Division summarily rejected Drake's arguments, holding:  "We also reject the contention of defendant that he did not receive effective assistance of counsel (*see generally People v. Baldi,* 54 N.Y.2d 137, 147, 444 N.Y.S.2d 893, 429 N.E.2d 400)."[76]  Drake also raised this issue in his § 440.10 motion.  The Onondaga County Court in denying Drake's motion, held:

> As to (1), Defendant's claim that the judgment was obtained in violation of Defendant's constitutional right to the effective assistance of counsel, relief must be denied because *CPL §440. 10(2)(a)* mandates that the court deny a motion to vacate the judgment when the ground or issue raised was previously determined on the merits upon an appeal, unless there has been a relative retroactive change in the law.[77]

---

[76] *Drake*, 794 N.Y.S.2d at 771.

[77] Docket No. 8-21, p. 2.

The flaw in Drake's argument under the Sixth Amendment is that nothing that the State or the state court did prevented him from obtaining counsel of his choice.[78]  Drake has cited no case in which a federal court has held that the refusal of a private counsel to represent a criminal defendant, or the assignment of an otherwise qualified associated attorney in a law firm to provide the representation, constitutes a violation of the Sixth Amendment.  Independent research by this Court has not found any such case.  "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[79]  "Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant."[80]  Drake, having failed to present a federal constitutional issue cognizable in a federal habeas proceeding, is not entitled to relief under his fourth ground.

Ground 5:  Trial Counsel Failed to Investigate/Prepare a Defense.

Although in his petition proper Drake does not identify any specific deficiencies in support of his conclusory statement, he does so in his *pro se* Supplemental Brief on Appeal appended to the petition.  Specifically, Drake pointed to two alleged deficiencies in trial counsel's performance.  First, he argued that counsel failed to point out that Drake was shown in a surveillance tape as coming out of the store at the same time as the victim was shot.  Second,

---

[78] *See Maine v. Moulton*, 474 U.S. 159, 170-71 (1985) (discussing the responsibilities of the State to honor the guarantees of the Sixth Amendment).

[79] *Wheat v. United States*, 486 U.S. 153, 159 (1988) (citing *Morris v. Slappy*, 416 U.S. 1, 13-14 (1983); *Jones v. Barnes*, 463 U.S. 745 (1983)).

[80] *See Wheat*.

19

Drake argued that witnesses testified that he was seen with a sling on his arm, but the witnesses failed to point out that Drake was seen exiting the store.[81]  The Appellate Division simply rejected Drake's arguments without explanation or elaboration.  In his traverse, Drake modifies his arguments, contending that counsel did not investigate the statements contained in police reports concerning his arm being in a sling, nor did counsel subpoena these witnesses.  Drake also criticizes trial counsel for not canvassing the vicinity of the crime or hiring an investigator to find additional witnesses who may have been present at the time of the crime.  As noted above in the discussion of Drake's first ground, this Court does not ordinarily address issues raised for the first time in the traverse.  For the reasons stated in declining to address the new factual matters asserted in connection with the first ground, this Court declines to address the new factual matters raised in the traverse on this ground.

The United States Supreme Court has said that counsel need not undertake exhaustive witness investigation.  The question is not "what is prudent or appropriate, but only what is constitutionally compelled."[82]  While "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," an attorney's strategic decisions "made after thorough investigation of law and facts relevant to plausible

---

[81] In footnote 5 on page 8 of his *pro se* Supplemental Brief on Appeal, Drake refers to police reports submitted as part of appellant's appendix on appeal.  This Court's review of the stipulated Appendix [Docket No. 8-1] did not uncover any such police reports.  There was testimony at a pretrial hearing by a police officer concerning an interview with a Reginald McMillan in which McMillan told the officer that at some time prior to that shooting he had seen the shooter with a sling on.  [Docket No. 8-26, pp. 57, 60.]  McMillan did testify at the trial. [Docket No. 8-27, pp. 284–99.]

[82] *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).

20

options are virtually unchallengeable."[83]  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[84]

Drake has failed to explain how the alleged deficiencies concerning his exiting the store, presented to the Appellate Division in his *pro se* Supplemental Brief, would have changed the outcome.  In particular, in light of the testimony of the two witnesses, who were outside the store, that they observed Drake shooting the victim, Drake has failed to show how the fact that he was exiting the store at the time the victim was shot proves he was not the shooter.  Drake's argument is simply counter-intuitive.  In short, even assuming, without deciding, that trial counsel's performance was deficient, Drake has failed to show any prejudice, *i.e.*, that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different as required by *Strickland-Hill*.

This Court cannot say that the assumed decision of the Appellate Division on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[85] Nor, viewing the matter through the doubly-deferential lens of *Mirzayance*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Drake's case within the scope of *Andrade–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

---

[83] *Strickland*, 466 U.S. at 690.

[84] *Id*. at 690-91.

[85] 28 U.S.C. § 2254(d).

Drake has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that Drake's defense was prejudiced, as required by *Strickland-Hill*. Drake is not entitled to relief under his fifth ground.

<u>Ground 6: Trial Counsel was Mentally Incompetent to Defend</u>.

Drake contends that because trial counsel was dealing with personal issues occurring outside the record that clearly affected his judgment, counsel was not mentally competent to defend him. Drake's contentions are based upon the fact that trial counsel was arrested for allegedly raping his girlfriend a few days after the jury returned the guilty verdict in Drake's trial. Specifically, Drake points to the statement of counsel's girlfriend that:

> Greg has been very unpredictable for the last 3 months and more specifically the last 7-10 days. He has been under stress from work as the result of a criminal trial he was participating in as the attorney for the defendant. He has received a lot of support from me emotionally and physically through his difficult week. Friends and colleagues will attest to this.[86]

Drake raised this ground in his § 440.10 motion. The Onondaga County Court in denying Drake's motion, held:

> As to (1), Defendant's claim that the judgment was obtained in violation of Defendant's constitutional right to the effective assistance of counsel, relief must be denied because *CPL §440. 10(2)(a)* mandates that the court deny a motion to vacate the judgment when the ground or issue raised was previously determined on the merits upon an appeal, unless there has been a relative retroactive change in the law.[87]

While this Court finds the allegations contained in the girlfriend's statement disturbing, it does not *ipso facto* establish counsel's performance was ineffective. Drake points to no

---

[86] Docket No. 8-17, p. 15.

[87] Docket No. 8-21, p. 2.

deficiencies in counsel's performance, other than those determined not to render counsel's performance ineffective.  In short, while Drake has established a reasonable likelihood that trial counsel was under significant psychological pressure, he has not established by the preponderance of the evidence that it adversely affected counsel's performance in defending Drake.  In the absence of evidence to the contrary, Drake has failed to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[88]

This Court cannot say that the assumed decision of either the Appellate Division or the Onondaga County Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[89]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Drake's case within the scope of *Andrade–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Drake has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that

---

[88] Taken in context, the failure of the Onondaga County Court to specifically address the newly discovered evidence of counsel's mental state was not erroneous.  Although not considered by the Appellate Division, the newly discovered evidence would not have changed its decision based on the record that counsel was not ineffective.  Nor did it change the fact that, under New York law, the issue could not be revisited on a motion under § 440.10.

[89] 28 U.S.C. § 2254(d).

Drake's defense was prejudiced, as required by *Strickland-Hill*.  Drake is not entitled to relief under his sixth ground.

## V.  CONCLUSION AND ORDER

Drake is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[90]  To the extent the issues raised in the petition were addressed by the Appellate Division, Fourth Department, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court is to enter final judgment accordingly.

Dated: March 3, 2010

                                                            /s/ James K. Singleton, Jr.
                                                            JAMES K. SINGLETON, JR.
                                                            United States District Judge

---

[90] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).